FILED

2017 Jul-05  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

MYRA SAWYER,

      PLAINTIFF,

V.                                                                    CIVIL ACTION NO.

ALABAMA MEDIA SOUTHEAST, LLC,
d/b/a The Huntsville Times
and/or www.al.com,

      DEFENDANT.                                         JURY TRIAL DEMANDED


## COMPLAINT

### I.    JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.  § 12101, *et seq.*  The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights secured by the ADA.

2.    Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

1

## II.   PARTIES

3.    Plaintiff, MYRA SAWYER, (hereinafter "Plaintiff") is a resident of Gurley, Madison County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Thus pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Northeastern Division.

4.    Defendant, ALABAMA MEDIA SOUTHEAST, LLC, d/b/a The Huntsville Times and/or www.al.com (hereinafter "Defendant"), is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama. Defendant is an entity subject to suit under 28 U.S.C. § 1331 and 42 U.S.C. § 12101, *et seq.*  Defendant employs at least twenty (20) persons.  Therefore, this Court has personal jurisdiction over Defendant.

## III.   STATEMENT OF FACTS

5.  Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-4 above.

6.    Defendant hired Plaintiff on or about August 31, 2015.

7.    Defendant terminated Plaintiff's employment on April 11, 2016.

8.    Defendant employed Plaintiff as an account executive.

9.    During the first six months of her employment, Defendant paid Plaintiff

a guaranteed salary with no commissions.

10.    During the six-month probation period, Defendant expected Plaintiff to develop clients who will purchase advertising products to be viewed on the Al.com website.

11.    At the conclusion of the six-month period, Defendant commenced compensating Plaintiff on a "salary plus commission" basis.

12.    During Plaintiff's seventh month of employment, without the safety net of the incentive guarantee, Plaintiff produced the highest revenue for the Alabama Media Group, Huntsville Hub, with a grand total of $69,554 in sales for that month.

13.    On the first day of April 2016, which was a Friday, Plaintiff closed an additional $17,100 in sales to commence the month.

14.    Plaintiff was qualified for her position as an account executive.

15.    During the first quarter of 2016, (Jan, Feb and March), Defendant's director set Plaintiff's total goals for sales in the amount $93,750.

16.    Plaintiff met those sales goals by completing a sales total amount of approximately $147,000.

17.    Plaintiff exceeded the sales goals, set by Defendant, by nearly $53,250.

18.    Plaintiff was diagnosed with Attention Deficient Hyperactive Disorder, which substantially limits the major life activity of listening, concentrating, thinking and communicating.

19. On April 1, 2016, Plaintiff had completed two very important closing meetings in a row.

20. One meeting resulted in a continuance for negotiation and the other was a successful closing in the amount of $17,100 with the possibility of an up-sale.

21. Plaintiff's lunch hours were flexible and Defendant permitted her to take lunch hours during the day, on any given day, as she saw fit according to her own time schedule and appointments.

22. On April 1, 2016, Plaintiff took her lunch hour at approximately 2:30 p.m. at a restaurant just a block away from Defendant's place of business.

23. Plaintiff walked to the restaurant and left her car parked in the parking garage.

24. During her lunch, a current and prospective AL.com client approached Plaintiff to talk to her about future business and she proceeded to discuss working with Plaintiff regarding advertising for her two successful restaurants.

25. While the client was giving Plaintiff information about what she needed from her, the potential client had the chef prepare a dish of apples with a caviar topping and a shot of "fine" tequila was served to the table.

26. The alcoholic beverage, coupled with Plaintiff's ADHD medication, which had been recently adjusted, affected Plaintiff.

27. Plaintiff returned to Defendant's office shortly after 3:30 PM.

4

28.    Upon returning to the office, Plaintiff's direct manager, Marc Notaro, approached Plaintiff and she explained the situation at the restaurant.

29.    Plaintiff also explained to Notaro that she had two successful meetings that day, one of them ending in a final close for a larger amount of money and the other was a larger amount of money being negotiated.

30.    Notaro told Plaintiff that he was pleased with her work and that Plaintiff could finish up with closing her entries for the sale so that the numbers could be posted.

31.    Notaro said once Plaintiff was done with that, that she could take the rest of the afternoon off as it was Friday afternoon and the work day was almost over anyway.

32.    Following Plaintiff's discussion with Notaro, Plaintiff worked on, and provided, her April Sales Forecast and entered her CRM DATA.

33.    At approximately 4:00 PM, Marc Notaro sent Plaintiff an email that indicated unless requested in advance, Plaintiff's actions that day were completely unacceptable.

34.    Notaro stated that Plaintiff was to be in the office every day at the end of the day and that he would see her soon.

35.    Notaro's email was contrary to the discussion and his instructions to Plaintiff that occurred just 20-minutes prior.

36.    During the weekend of April 2 and April 3, 2016, Plaintiff sent an email to Marc Notaro informing him that she had ADHD and she explained to him the nature of being diagnosed Attention Deficit Hyperactive Disorder and the medication and how it is similar to other sorts of mental health medications, which require a trial and error period when it comes to determining the proper dosage amount.

37.    On April 11, 2016, Marc Notaro terminated Plaintiff's employment.

38.    Defendant's HR employee, Ellen Williams and the Director of Outside Sales, Kevin Warren, informed Plaintiff that Defendant terminated her employment because Marc Notaro stated that on April 8, 2016, Plaintiff told him that she was in a car during work hours with her domestic partner and the two were driving around Huntsville smoking marijuana and then she returned to work.

39.    Plaintiff informed them Williams and Warren that Marc Notaro's statement was untrue as Plaintiff was not using marijuana whatsoever and that she never stated to him that she had done what he accused her of doing.

40.    Williams and Warren asked Marc Notaro to join the meeting.

41.    Notaro stated that Plaintiff had told him about her being treated for ADHD, and then he finished that statement by saying "blah...blah...blah," and he stated that Plaintiff was also being fired for the consumption of alcohol during work hours on April 1, 2016.

42.   Plaintiff immediately pointed out that throughout her employment with Defendant, management had found it acceptable to consume an alcohol beverage during lunch or at the end of a Friday while celebrating great sales numbers.

43.   Throughout Plaintiff's employment, drinking alcohol during working hours was not forbidden.

44.   During Plaintiff's seven months of employment with Defendant, it was not uncommon for any of the sales staff to participate in, and enjoy an alcoholic beverage, during mealtime and sometimes as a group during business hours.

45.   Defendant employed the following people in the same department as the Plaintiff:  Ashley Walls, Natasha Bove, Kevin Warren, Jared Smith,  and Brad Davidson.

46.   Specifically, Ashley Walls, Natasha Bove, Kevin Warren, Jared Smith, and Brad Davidson.  also consumed alcoholic beverages during working hours.

47.   Warren informed these employees, and the Plaintiff, that consuming alcoholic beverages during work hours was permissible, so long as no one became impaired.

48.   On April 11, 2016, Plaintiff indicated that she was aware that the Defendant has an employee assistance service and that she would be happy to use it to help with the adjustment of her medication that treats her ADHD.

49.   Immediately after the termination meeting, Plaintiff paid for, and

submitted to, a voluntary drug test which indicated negative for all substance abuse.

50.     Defendant terminated Plaintiff's employment because of her disability in violation of the Amended Americans with Disabilities Act.

## IV.    COUNT ONE – ADA – Disability Discrimination

51.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-50 above.

52.     Plaintiff suffers from the mental health impairment of Attention Deficient Hyperactive Disorder.

53.     Plaintiff's Attention Deficient Hyperactive Disorder affects her such that the major life activities of concentrating and communicating are substantially limited as compared to the average person in the general population.

54.     Plaintiff uses medications in order to assist her limited ability to concentrate and communication, but such medication still makes her Attention Deficient Hyperactive Disorder a substantially limited impairment as compared to the average person in the general population.

55.     Plaintiff was diagnosed with Attention Deficient Hyperactive Disorder in February 2016.

56.     Plaintiff was qualified for the essential functions of her job as she had the skill to commence her sales job in August 31, 2015 and within six months

exceeds Defendant's First Quarter sales goal of $93,250 by obtaining approximately $147,000 in sales during that time frame.

57.    But for Plaintiff's disability, Defendant would not have terminated Plaintiff's employment.

58.    In terminating Plaintiff's employment, Defendant violated the ADA because of Plaintiff's disability.

59.    As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits and mental anguish.

## V.    PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the ADA;

B.    Enter an Order requiring the Defendant to make Plaintiff whole by reinstating her to the position she previously held, had she not been discriminated against;

C.    Award her back pay, together with employment benefits, front pay; compensatory damages; punitive damages; special damages; nominal damages;

D.    Attorneys' fees and costs;

E.      Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 12101 that the actions of Defendant violate the law; and,

F.      Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

_____
OF COUNSEL

DEFENDANT'S ADDRESS:
ALABAMA MEDIA SOUTHEAST, LLC
c/o Ellen Williams, Director of Human Resources
1731 First Avenue North
Birmingham, AL 35203